# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

DAVID LEE FOREMAN

      Petitioner,

v.                                      Case No. 3:19-cv-575-TJC-JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## <u>ORDER</u>

## I.   <u>Status</u>

Petitioner, an inmate of the Florida penal system, initiated this case by filing a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254. Doc. 1. He is challenging a state court (Duval County, Florida) judgment of conviction for lewd and lascivious molestation. He is a designated sexual predator currently serving a life term of incarceration. Respondents have responded. <u>See</u> Doc. 9; Resp.[1] Petitioner replied. <u>See</u> Doc. 13. This case is ripe

---

[1] Attached to the Response are several exhibits. <u>See</u> Docs. 9-1 to 9-12; S-14 The Court cites the exhibits as "Resp. Ex."

for review.[2]

## II.     <u>Governing Legal Principles</u>

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert.</u> <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's

---

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's

3

determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional

4

issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to

5

> preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[3] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[4] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

---

[3] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[4] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

---

[5] Murray v. Carrier, 477 U.S. 478 (1986).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with §

2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

### III.   Relevant Procedural History and Evidence Presented at Trial

The state filed an Information charging Petitioner with lewd or lascivious molestation of his cousin, B.N., a child less than 12 years old. Before trial, the state filed three notices of intent to introduce child hearsay evidence under § 90.803(23), Florida Statutes, involving statements the victim (B.N.) made to her father (John N.), mother (Lisa F.), and a Child Protection Team (CPT) member (Dawn Hawn). Resp. Ex. B. The trial court conducted a pretrial hearing on the notices, during which it considered testimony from B.N. and John N. and was provided the CPT recorded interview between B.N. and Hawn. Resp. Exs. E, D. The state did not present testimony from Lisa F. at that time because she was unavailable. Resp. Ex. F at 218. At the end of the hearing, the trial court advised it would take the matter under advisement and rule on the admissibility of the evidence after it had a chance to review the CPT recorded interview. Resp. Ex. D.

A few days later, the trial court granted the state's request to present at trial the proffered testimony from B.N. and John N., as well as Hawn's CPT interview with B.N. The trial court explained its ruling on the record:

10

[B]ecause of the testimony that was presented, the Court has also had the opportunity to review the CPT interview with the child. Because of this Court's observation of the interview, as well as the child's testimony and the father's testimony, I am going to permit the state to introduce the child hearsay statements as contemplated by its notice and through the manner and means provided to the trial court during the course of the hearing.

The Court's reasoning for that, so the record is clear, as to my determination and evaluation under [90].803(23), I will first talk about the child and reliability of the child. There is no evidence whatsoever before the Court that this child does not understand what it means to tell the truth. She in fact distinguishes in the CPT interview between what is true and what is a lie. She defines truth as when you're not telling a lie, and she is able to, based on the examples given by the CPT worker, to distinguish what would be true and what would be incorrect and a lie.

There was also no meaningful delay in her reporting the matter. She did so voluntarily. She did so without any kind of pressing or questions or anything of that sort. She reported it at [the] first available opportunity when her mother returned home, and her mom indicated to her she would take care of it. She then reported it later to the father. I will talk about the timing sequence as to the dad in just a minute.

The child also gives a very childlike description of the episode. She exhibits a knowledge, innocent as it is, thankfully, for a child her age. She is unaware of certain realities of adult male genitalia. She is unable to say that she has ever seen that. She is then unable to describe what male genitalia looked like. And based on her blissful ignorance in that regard, she knows enough to say that when the defendant allegedly perpetrated this conduct, she saw hair down in his pubic region that evidences for -- it tends to support the

11

reliability of such a statement in light of the fact that when you compare what she claims to have seen with the reality of what would be expected in comparing that to her ignorance as being able to describe male genitalia otherwise, that certainly adds and heightens the credibility or reliability of the statement.

As far as my personal observations of her, she was timid on the witness stand. She was fidgeting on the witness stand, and that is exactly what you would expect from a child of her age being asked to discuss such matters in a roomful of people that she was asked to discuss.

She also makes statements that no child conceivably could make unless there was -- unless she believed -- let me rephrase. I want the record to be very clear. She made statements that allegedly were made by the defendant that it would be inconceivable to the Court a child could fabricate, such as when the alleged conduct is taking place, the defendant allegedly says, ["]This will get your emotions right.["] She has no way to know what that means. She has no way to know why that would be said. She has no way to, frankly -- she doesn't know -- in the CPT interview she says point blank she doesn't know why the defendant was doing this. Later claimed to be wrestling, but she doesn't know why this was taking place, and yet she knows enough to say, ["]This will get your emotions right.["]

And despite that, in light of the later allegations, they were wrestling, things of that sort, there is absolutely nothing within the record presented, both in the CPT interview and that child's testimony that cause this Court to in any manner question the reliability of that statement for the purposes of my evaluation under [90].803(23).

Reliability of the child's statement is ultimately a matter for the jury, so I'm not saying -- and I'm not called to reach in this kind of a hearing whether or not

the child's statement is accurate, not accurate. That is for the jury to decide, but there is nothing that is presented to this Court that would cause me to question reliability as contemplated by the child hearsay such as the evidence code.

Which leaves me then to determine the reliability or trustworthiness of the source through which the information was recorded and that, of course, being her father.

There are certainly matters ripe for cross-examination before a trial. Those matters were well, artfully, and thoroughly explored by Mr. Niemczyk during the hearings, and the Court anticipates that will take place during the course of the trial.

Nonetheless, none of those matters presented uncertainty as to the time of the disclosure as to when he was released from jail, the father that is, or not or the exact number of days. There was some degree of the uncertainty that the witness, the father, you know, frankly admitted that he's not sure of. There is nothing that proves fatal to the trustworthiness of the source through which the child's statement was indicated.

The father says he had never met the defendant. The father says he didn't know who the defendant was prior to this episode. The father says he had no animosity, no reason for animosity, and this Court can glean of no animosity or reason therefore between the father of the child and this defendant. And in fact, if I recall correctly, on the witness stand the father said this is the first time in that hearing the first time the father ever laid eyes on this defendant.

So because of those sorts of things and because there is nothing in the evidence that draws those assertions into question and because the matters that are ripe for cross-examination are not fatal to the trustworthiness of the father when I evaluate the

> trustworthiness of the father and the reliability of the
> child based on the specific factors I discussed compared
> to the factors of the evidence code that are
> contemplated, there is no basis for this Court to exclude
> the child hearsay, and the Court will permit the
> hearsay to be presented.

Resp. Ex. E.

On the morning of trial, the state requested that the trial court rule on the admissibility of Lisa F.'s child hearsay testimony. Resp. Ex. F at 218-19. When asked about the delay in presenting her testimony, trial counsel agreed he was aware of this witness, had deposed her, and that Petitioner would experience no prejudice from the trial court's late consideration of her proffered testimony. Id. at 219. The trial court then heard testimony from Lisa F. Id. at 221. And it ruled that the child hearsay testimony from Lisa F. would be admissible at trial. Id. at 244-56. The trial court explained:

> [A]ll of that previously determined by the Court
> certainly are considered by the Court at this time.
> Specifically my review at this hearing on the eve of trial
> is to determine whether or not the source, that is, the
> mother of the child in this case, presents sufficient
> indicia of trustworthiness, and the Court finds based on
> that testimony, that there is nothing to suggest un-
> trustworthiness. There's no indicia that would draw
> into question this testimony to the extent that it
> require exclusion.
>
> The defendant is related by blood to the mother
> of the child, and admittedly they are not close relatives.
> They probably apparently had not met before, but there
> would be no basis to assert and none was alleged or
> inquired about any hostility between the mother of the

14

child and the defendant in this case and that the mother had a perfectly amicable relationship with the defendant, allowing the defendant to come and go as he pleased at her house to the extent of even asking the defendant to babysit the child or be at home with the child while the mother went to work at McDonald's from early morning to mid-afternoon shift and that there is no basis whatsoever for this Court to even suppose any personal animosity between the parties that would draw credibility into question and that the statements referenced by the child were presented to her at – to the mother at the first available opportunity, in the child-like descriptions, describing acts that this child under normal circumstances, ordinary circumstances would not be able to comprehend the significance of the type of conduct that was reportedly placed upon this child.

So for those reasons, I'll find, under [90.]803.23 and incorporating the Court's prior ruling, as well, that the statement of the child to the mother is admissible through the mother's testimony, also.

Resp. Ex. F at 244-46.

During trial, B.N. testified that on the day of the incident, Petitioner was babysitting her while her mother was at work. Id. at 293-313. According to B.N., at some point, Petitioner asked B.N. to join him in her mother's bedroom. Id. at 300. B.N. stated that when she went into the bedroom, Petitioner grabbed her by the waist, straddled her legs across his lap facing him, and forcefully moved her body so that her clothed private area rubbed against his clothed private area. Id. at 306-10. B.N. explained that she did not like what Petitioner was doing and tried to push him away, but Petitioner would not let go of her waist

and told her that if she did not stop crying, he would call the police. Id. at 310-12. B.N. described that Petitioner's pants were so low on his waist that she could see hair and explained she had seen nothing like that before. Id. at 315. According to B.N., she eventually pushed herself off Petitioner but in doing so, she fell and hit her head on the dresser. Id. at 316. She also testified that Petitioner discussed sex with her and read from a "nasty book." Id. at 318-26.

Once B.N. managed to push away, she ran to a neighbor's house and tried to call her parents but neither parent answered. Id. at 326. B.N. testified that her mother then confronted Petitioner two weeks later when he showed up at their apartment and Petitioner advised that they were "just wrestling." Id. at 331-32. During cross-examination, trial counsel tried to impeach B.N. by highlighting several variations between her trial testimony and deposition testimony. See id. at 341-47.

Lisa F. testified that she asked Petitioner to babysit B.N. on the day of the incident. Id. at 364-65. While at work, she received a phone call from a neighbor but explained she could not answer because she was at work. Id. at 365. When she got home, Lisa F. found B.N. in the kitchen. B.N. immediately told Lisa F. that she had to discuss something with her and appeared anxious and serious. According to Lisa F., B.N. advised her that Petitioner picked her up and "started banging [her] against his private part." Id. at 370. Lisa F. explained that she did not call the police but comforted B.N. and later

16

confronted Petitioner. Id. at 372-74. During cross-examination, trial counsel elicited testimony that Lisa F. owned a pornographic magazine that B.N. had previously seen and Lisa F. testified that B.N. first told her that her back was to Petitioner during the incident. Id. at 380-88.

John N. testified that B.N. voluntarily advised him of Petitioner's actions days later. Id. at 411-13. According to John N., B.N. stated that Petitioner picked her up and straddled her legs around him and bounced her on his lap. Id. B.N. told him that Petitioner's waistband was loose fitting and that she saw hair. Id. John N. stated that when he learned that Lisa F. did not call the police, he called police and reported the offense. Id. He explained that B.N. still talks about the incident and is receiving professional counseling. Id. at 423-25.

Hawn testified that she conducted a CPT interview of B.N. following the police report. Id. The redacted CPT recorded interview was played for the jury. Id. at 440-84. During the interview, B.N. advised Hawn she knew the difference between a lie and the truth, agreed that she would only tell the truth during their conversation, and told Hawn what Petitioner did to her. Id. The version of events B.N. relayed during the interview was the same version B.N. told her parents and testified to at trial.

The jury found Petitioner guilty of the charged offense. Id. at 577. Petitioner, with help from appellate counsel, sought a direct appeal challenging his conviction based on two claims of trial court error – (a) the trial court erred

in allowing B.N.'s parents to testify to the child hearsay statements; and (b) the trial court erred in denying Petitioner an opportunity to cross-examine John N. about his sex offender status. Resp. Ex. G. The First District Court of Appeal per curiam affirmed Petitioner's judgment and conviction without a written opinion. Resp. Ex. J. Petitioner filed with the trial court a Florida Rule of Criminal Procedure 3.850 motion raising twelve grounds for relief, including several ineffective assistance of counsel claims and claims of prosecutorial misconduct. Resp. Ex. K at 1-166. Plaintiff later filed with the First DCA a petition alleging ineffective assistance of appellate counsel, asserting appellate counsel was ineffective for failing to challenge the sufficiency of the evidence on direct appeal. Resp. Ex. N. Both state court postconviction motions were denied on the merits. See Resp. Exs. K at 382-642; M; O. This action followed.

## IV.   **The Petition**

In a rambling narrative format, Petitioner alleges several sub-claims, which are often difficult to decipher. But when read in concert, all allegations seem to challenge the sufficiency, admissibility, and constitutionality of the child hearsay testimony presented at trial. See Doc. 1 at 6. To effectively address his claims, the Court groups Petitioner's allegations into three categories – (a) trial counsel was ineffective for failing to adequately challenge the admissibility of the child hearsay testimony during pretrial hearings and trial; (b) the state engaged in prosecutorial misconduct by knowingly presenting

18

false, unreliable child hearsay evidence; and (c) the trial court erred in allowing the state to present inadmissible and unreliable child hearsay evidence. The Court addresses each category in turn.

### (a) Ineffective Assistance of Trial Counsel

Petitioner argues that his trial counsel was ineffective for failing to adequately challenge the evidence presented at trial. Doc. 1 at 6-9. Petitioner contends that trial counsel failed to object to the admissibility of the child hearsay evidence because the trial court never made a pretrial determination about the reliability of the evidence under § 90.803(23). Id. at 9. He also asserts that his trial counsel failed to effectively challenge B.N.'s trial testimony and impeach her testimony with inconsistent pretrial statements. According to Petitioner, B.N.'s initial reports did not establish the elements of the charged crime because B.N. did not make any pretrial remarks that Petitioner touched her "private parts." Id. at 7. He asserts that at trial, B.N.'s testimony changed to establish the elements of a crime, and trial counsel failed to impeach B.N. with her prior inconsistent statements that the offense did not occur. Id. at 8. To that end, Petitioner argues that the evidence was insufficient to support his conviction, and trial counsel failed to object "to the state['s failure to adhere] to its obligation of a fair and impartial trial on the evidence" and improperly waited until closing arguments to highlight this lack of evidence. Id. at 7.

Petitioner raised similar allegations in his Rule 3.850 motion.[6] Resp. Ex. K at 155-67. The trial court denied the claims in relevant part as follows:

### Ground Five

Defendant maintains counsel was ineffective for failing to challenge testimony of the State's "chief witness," the victim, by introducing prior inconsistent statements or adequately cross-examining that witness. In addition, Defendant states counsel did not zealously advocate for him or hold the State to its burden.

This Court granted Defendant leave to amend in order to identify the inconsistent statements to which he was referring and upon what grounds counsel should have cross examined the victim. In response, Defendant filed his February 23, 2017 Motion, listing portions of the trial transcript. All testimony presented at trial was done so in front of the jury and, thus, the jury heard all the testimony [Defendant now asserts was "inconsistent"], including the victim's testimony and Child Protection Team ("CPT") interview . . . . The jury was further instructed regarding weighing the credibility of witnesses. Hearing the testimony presented, the jury was able to believe or disbelieve any testimony presented. Therefore, counsel cannot be said to be ineffective for failing to present testimony that was already presented to the jury. Brant v. State, 197 So. 3d 1051, 1073 (Fla. 2016) ("[T]rial counsel is not ineffective for failing to present cumulative evidence.").

---

[6] Respondents argue that Petitioner failed to exhaust his ineffective assistance of counsel claims because he never presented the allegations to the state court. Resp. at 18. Alternatively, Respondents address these allegations on the merits and contend Petitioner is not entitled to federal habeas relief. Id. at 20-24. In his Reply, Petitioner argues that he properly exhausted these allegations because he raised versions of these claims in state court. Doc. 13 at 13. Liberally read, the Court finds that Petitioner presented a version of these allegations to the state court, the state court considered these ineffective assistance of counsel claims, and thus, for purposes of this Order, the Court finds these claims are exhausted.

Defendant cites only one statement from the hearing on the admissibility of child hearsay that the jury did not hear at trial. On the page cited by Defendant, the victim stated she could not feel Defendant's "private part," while at trial she stated she could and it was uncomfortable. Even assuming <u>arguendo</u> counsel was ineffective for failing to present this inconsistency to the jury, this Court finds there is no reasonable probability the result of the proceeding would have been different. Initially, this Court notes that the victim's version of events was largely consistent. Moreover, counsel did point out a number of inconsistencies in the victim's testimony during his cross-examination. Even if the victim consistently testified that she could not feel Defendant's private part, her remaining consistent testimony would still have been sufficient to find Defendant guilty. Accordingly, this Court finds Defendant is not entitled to relief as to this ground.

. . . .

## Ground Six

. . . .

Defendant submits counsel was ineffective for failing to object to the trial court's oral ruling based on the trial judge's alleged failure to consider all factors under 90.803(23), specifically 90.803(23)(a)(1). It is clear from the trial court's ruling that it considered 90.803(23), as the trial court not only addressed the factors, but cited subsection (23) specifically. Moreover, it is clear from the record that the trial court considered the factors outlined in 90.803(23)(a)(1). Thus, counsel cannot be deficient for failing to make a meritless objection. <u>See</u> <u>Schoenwetter</u>, 46 So. 3d at 546. Moreover, despite Defendant's failure to allege sufficient prejudice under <u>Strickland</u>, this Court finds that because an objection would have been meritless, there is no reasonable probability the result of the

proceeding would have been different had counsel objected. Defendant is, thus, not entitled to relief.

. . . .

## Ground Eight

Defendant alleges counsel was ineffective for failing to advise the trial court Defendant should not have been adjudicated guilty. Defendant asserts the State used false testimony from the victim.

In this ground, Defendant is essentially challenging the admissibility, validity, and sufficiency of the evidence against him. Thus, this claim is not cognizable and will not be entertained. Betts v. State, 792 So. 2d 589, 590 (Fla. 1st DCA 2001) (holding that because defendant may not challenge the admissibility, validity, or sufficiency of the evidence against him in a motion seeking postconviction relief, such claims are procedurally barred and will not be considered by the Court) (emphasis added). Moreover, Defendant cannot couch such a barred claim in terms of ineffective assistance of counsel to allow review. Albelaez v. State, 775 So. 2d 909, 915 (Fla. 2000) (holding a defendant "may not relitigate procedurally barred claims by couching them in terms of ineffective assistance of counsel.").

Additionally, the "false" testimony discussed in this Ground is the same as discussed in Ground Five. The "false" testimony was a mere inconsistency, and this Court finds that even with the removal of that testimony, there is no reasonable probability the outcome of the proceeding would have been different. Defendant is, therefore, not entitled to relief.

. . . .

22

## Ground Eleven

Defendant maintains counsel was ineffective for failing to produce record evidence to challenge testimony of the victim, witness Lisa Foreman ("Lisa"), and witness John Napier ("Napier"). Specifically, Defendant states Lisa and Napier gave inconsistent statements regarding whether the victim ever got in trouble or lied, previous domestic violence in the household, that the words "thrusting and grinding" were suggested to the victim, and the crimes committed by Napier.

The matters upon which Defendant suggests counsel should have impeached the three witnesses have little to no relevance to the facts of the instant case. Many matters discussed by Defendant would have been inappropriate for impeachment. Moreover, counsel attempted to impeach these witnesses on other grounds. Lastly, the comments discussed by Defendant are largely outside the realm of those matters testified to at trial, not inconsistent to the testimony. Counsel elicited testimony from the victim's mother and father regarding differences in the victim's descriptions of the event as well as to impeach the other witness's testimony. Therefore, counsel did not act deficiently in attempting to impeach witnesses on irrelevant matters when counsel was able to impeach the witnesses on their testimony regarding this case. Lastly, this Court further finds that even assuming arguendo counsel was deficient for failing to impeach the witnesses in the ways asserted by Defendant, there is no reasonable probability the outcome of the proceeding would have changed. Accordingly, Defendant is not entitled to relief.

## Ground Twelve

Defendant states counsel was ineffective for failing to make the trial court and jury aware of his actual innocence, by presenting exculpatory testimony

from the victim. Defendant asserts the victim's exculpatory testimony was consistent with his statements, maintaining his innocence throughout the pendency of this case.

Defendant cites to the victim's trial testimony and testimony at the hearsay hearing to show the victim's exculpatory testimony. However, this trial testimony was presented at trial, and the jury heard this testimony. It makes no difference whether the testimony was presented by the State or defense. Therefore, Defendant cannot show counsel was ineffective for resubmitting this testimony, or that the outcome of the proceeding would have been different had counsel presented the evidence, rather than the State. Defendant is, therefore, not entitled to relief as to the presentation of the testimony that was already presented to the jury.

Again, to the extent Defendant is challenging the admissibility, validity, and sufficiency of the evidence against him, this claim is not cognizable and will not be entertained. Betts, 792 So. 2d at 590. As the testimony Defendant is contesting here is the same testimony he contests in Grounds Five and Eight, this Court adopts its analysis above. Defendant is, therefore, not entitled to relief.

Resp. Ex. K at 383-95. Petitioner appealed, and the First DCA per curiam affirmed the trial court's summary denial without a written opinion. Resp. Ex. M.

The First DCA's adjudication of these ineffective assistance of counsel claims is entitled to AEDPA deference. In applying such deference, the Court notes the constant theme of Petitioner's allegations here and in state court has been to attack the admissibility, validity, and sufficiency of the evidence against

him. Before trial, the trial court conducted a thorough evidentiary hearing to determine the admissibility and reliability of B.N.'s statements to her parents and Hawn, and those pretrial statements largely matched the statements B.N. made at trial. While B.N. testified at trial that she could feel Petitioner's "private part" during the incident but testified at the pretrial hearing that she did not feel his "private part," that inconsistency alone is not dispositive evidence of innocence. And Petitioner cannot show that but for trial counsel's failure to impeach B.N. with that statement, the outcome of his trial would have been different. Thus, the Court finds that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Petitioner's ineffective assistance of counsel claims are due to be denied.

### (b) Prosecutorial Misconduct

Petitioner argues that during trial, the state "allowed perjured/false testimony to go uncorrected" in violation of <u>Giglio</u>[7] and Petitioner's Fourteenth Amendment rights. Doc. 1-1 at 1. He also alleges that the state did not provide the required notice of its intent to use hearsay testimony under the state's

---

[7] <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

discovery obligations. Doc. 1 at 9.

Petitioner raised similar claims in his Rule 3.850 motion. Resp. Ex. K at 10, 94, 126. The state court found that these allegations were procedurally barred, explaining as follows:

> In Grounds One, Two, Three, and Nine, Defendant asserts the State engaged in prosecutorial misconduct by: (1) allowing false testimony to be presented and allowing the testimony to go uncorrected; (2) vouching or bolstering credibility of State witnesses; (3) alleging Defendant was guilty during trial, thereby removing his presumption of innocence; and (4) failing to adhere to rule 3.220 in discovery. Issues of prosecutorial misconduct, however, are not cognizable in a 3.850 motion. Spencer v. State, 842 So. 2d 52, 60 (Fla. 2003); Johnson v. State, 985 So. 2d 1215, 1215 (Fla. 1st DCA 2008). Accordingly, these claims are barred and will not be addressed.

Resp. Ex. K at 383. The First DCA per curiam affirmed the trial court's ruling without a written opinion. Resp. Ex. M.

A procedural default may result from non-compliance with state procedural requirements. See Coleman, 501 U.S. at 729-30. Here, the Court is barred from reaching the merits of Petitioner's prosecutorial misconduct claims because he failed to comply with an independent and adequate state procedural rule when he presented the allegations to the state court. Wainwright v. Sykes, 433 U.S. 72, 85-86 (1977). The procedural bar the state court imposed in Petitioner's case is firmly established and regularly followed in the Florida courts. See Spencer, 842 So.2d at 60 (finding substantive prosecutorial

misconduct claims raised in a Rule 3.850 motion were procedurally barred because they were not raised on direct appeal); see also Spencer v. Sec'y, Dep't of Corr., 609 F.3d 1170, 1180 (11th Cir. 2010) (finding claims of prosecutorial misconduct were procedurally barred because the state court, on collateral review, denied the claims based on an independent and adequate state procedural rule and the petitioner failed to argue facts to overcome the procedural bar). Petitioner does not argue that there is any cause or prejudice to excuse his procedural default. Nor does he claim actual innocence to overcome this procedural bar. Thus, the Court cannot consider Petitioner's claims of prosecutorial misconduct and those claims are due to be denied.

### (c) Trial Court Error

Finally, Petitioner ostensibly argues that the trial court erred in ruling that the child hearsay evidence was admissible because it "lacked the necessary reliability to be used at trial" and did not satisfy the stringent "safeguards established in 90.803(23)." Doc. 1 at 9. Petitioner, with the help of appellate counsel, raised this claim on direct appeal, and the First DCA denied the claim and affirmed Petitioner's judgment and conviction without a written opinion. Resp. Ex. J.

First, to the extent that Petitioner urges that the state court erred under Florida law when it allowed the state to present this evidence, this allegation is not cognizable on federal habeas review. "As a general rule, a federal court in a

habeas corpus case will not review the trial court's actions concerning the admissibility of evidence," because the state court "has wide discretion in determining whether to admit evidence at trial[.]" Alderman v. Zant, 22 F.3d 1541, 1555 (11th Cir. 1994); see also Baxter v. Thomas, 45 F.3d 1501, 1509 (11th Cir. 1985) (federal habeas corpus is not the proper vehicle to correct evidentiary rulings); Boykins v. Wainwright, 737 F.2d 1539, 1543 (11th Cir. 1984) (federal courts are not empowered to correct erroneous evidentiary rulings in state court unless rulings deny the petitioner fundamental constitutional protections). Thus, Petitioner's underlying challenges to the state court's determination on the admissibility of the child hearsay evidence generally are not proper for this Court's consideration.

Further, to the extent that Petitioner's trial court error claims can be liberally construed as a federal constitutional challenge, the claims are unexhausted because Petitioner did not present the federal nature of the claims to the state appellate court. On direct appeal, Petitioner argued that the trial court abused its discretion in admitting unreliable and cumulative child hearsay evidence through testimony from B.N.'s parents. Resp. Ex. G at 19-23. When briefing the issue, Petitioner did not state or suggest it was a federal claim about due process or any other federal constitutional guarantee. Id. Instead, Petitioner argued, in terms of state law only, that the trial court failed to heed the evidentiary standard in § 90.803, Florida Statutes. Id. at 19-20.

Thus, these claims are unexhausted and procedurally defaulted, and Petitioner has failed to show cause for or prejudice from this procedural bar. Likewise, Petitioner has failed to demonstrate that failure to consider these claims on the merits will result in a fundamental miscarriage of justice.

In any event, assuming these claims are exhausted and properly presented to the Court, they are still without merit because the state court's evidentiary ruling did not "'so infuse[] the trial with unfairness as to deny due process of law.'" Smith v. Jarriel, 429 F. App'x 936, 937 (11th Cir. 2011)[8] (quoting Felker v. Turpin, 83 F.3d 1303, 1311-12 (11th Cir. 1996)). As such, Petitioner's claims of trial court error are due to be denied.

## V.   Newly Raised Claims in Reply

In his Reply, Petitioner largely restates the allegations in his Petition, maintaining that the evidence presented at trial was insufficient to support his conviction and contradictory to the witnesses' pretrial statements. See generally Doc. 13. He also raises additional claims not previously presented in his Petition. He argues for the first time that trial counsel was ineffective for failing to call Tamika Williams and Renard Forman as defense witnesses at

---

[8] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

trial, id. at 6; the child hearsay testimony presented at trial violated Petitioner's confrontation and due process rights, id. at 15; the trial court imposed a sentence "in extreme of scoresheet guidelines," id. at 10; and the trial court improperly denied Petitioner's motion for judgment of acquittal based on false evidence, id. at 13, 15.

The Court need not consider these new claims raised for the first time in Petitioner's Reply brief. See Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005) (finding arguments raised for the first time in reply brief not properly before reviewing court). Petitioner did not seek leave to amend his Petition to add these claims after Respondents responded. See Fed. R. Civ. P. 15(a)(2); see also Oliveiri v. United States, 717 F. App'x 966, 967 (11th Cir. 2018) (affirming district court's decision to not construe reply brief as a request for leave to amend § 2255 petition to add new claim as amendment would be untimely and futile); Garcia v. Sec'y, Dep't of Corr., No. 8:10-cv-2116-T-27MAP, 2013 WL 3776674, at *4-5 (M.D. Fla. July 17, 2013) (noting that habeas petitioner's new claim raised in his reply was not authorized, where the Rules Governing Habeas Corpus Cases Under Section 2254 required all grounds for relief to be stated in the petition, and petitioner failed to seek leave to amend his petition after a response had been served); Ware v. Crews, No. 3:12cv524, 2013 WL 3546474, at *14 (N.D. Fla. July 11, 2013) (finding petitioner did not properly raise forfeiture of gain time claim where petitioner raised it for the

first time in reply to respondents' answer, petitioner did not seek leave to amend petition, and reply expressly stated intent that document be deemed reply to answer). The Court also declines to construe these new conclusory allegations lacking in any support or discussion to be a proposed amended petition or a request to amend his Petition. Thus, to the extent that Petitioner attempts to add these claims, the Court declines to address them because they are improperly raised.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED with prejudice**.

2.     The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3.     If Petitioner appeals the dismissal of this case, the Court denies a certificate of appealability.[9] Because the Court has determined that a certificate

---

[9] The Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, the Court will deny a certificate of appealability.

of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of August, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:    David Lee Foreman, #D98649
      Counsel of record